## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        *Plaintiff,*

v.

        Case No. 23-CR-10030-EFM

ERIC HONORS,

        *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Eric Honor's Motion to Dismiss Restitution (Doc. 136). Defendant received a trial by jury, and on March 28, 2024, the jury found him guilty of transportation with intent to engage in criminal sexual activity and sexual exploitation of a child. The minor victim was Defendant's stepdaughter, whose mother is still married to Defendant. Because of this, on July 12, 2024, the Government moved to bifurcate restitution from sentencing and asked the Court to appoint a guardian ad litem for the minor victim.

On July 23, 2024, the Court granted the Government's motion to bifurcate restitution from sentencing, and on August 5, 2024, the Court granted the Government's motion to appoint the minor victim a guardian ad litem.

On August 12, 2024, the Court sentenced Defendant. On October 1, 2024, the Government emailed the Court to set a restitution hearing stating, "90 days from sentencing on August 12 would be Sunday November 10, so I think Friday November 8 would be our last day within the window?" The Court informed counsel that its first available date was Monday, November 18. Neither party

objected to the hearing date the Court set, even though November 18 was 96 days after Defendant's sentencing date.

Ultimately, the Court held the restitution hearing on November 20, 2024. A few minutes before the hearing began, the Government gave Defendant a copy of its restitution calculations for the first time.. At the start of the hearing, Defendant argued that the late production of the restitution calculations deprived him of the ability to be prepared for the hearing, and that moreover the Court lacked jurisdiction to rule on the restitution issue because it failed to make clear that it would order restitution prior to the expiration of the 90-day deadline.

The Court decided to stay ruling on the restitution issue until the parties fully briefed the jurisdictional issue. By December 20, 2024, the matters were fully briefed. The Court held a re-hearing on January 7, 2025, to determine whether it had jurisdiction to issue restitution, and if so, what the amount of restitution would be. For the reasons stated below, this Court finds that it retains jurisdiction to issue restitution and awards the minor victim restitution in the amount of $54,400.

A.    **The Court's Authority to Issue Restitution**

Under 18 U.S.C. § 3664(d)(5), "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." Defendant argues that restitution is a jurisdictional issue, which strips the Court of its authority to award the requested amount after this deadline has lapsed. Defendant also claims that the Court never made clear its intent to order restitution, which is necessary to continue a restitution hearing beyond the 90-day deadline. The Government claims that restitution is not a jurisdictional issue, asserting that although the 90-day deadline is legally enforceable, missing it does not deprive a judge the power to take the action to which the deadline applies. Additionally, the Government contends that on multiple occasions the

Court made clear its intent to order restitution. Both parties cite *Dolan v. United States*[1] and *United States v. Dando*[2] to support their arguments.

In *Dolan v. United States*, the district court stated at the defendant's sentencing, that the restitution amount would be left open pending receipt of additional information.[3] Ultimately, however, the district court did not enter the restitution order until after the expiration of the 90-day deadline.[4] The Supreme Court held that a sentencing court that exceeds the restitution deadline nonetheless retains the power to order restitution, at least where it made clear prior to the deadline's expiration that it would order restitution.[5] The Court reasoned that the restitution statute did not specify a consequence for noncompliance with the timing provisions, and denying a victim restitution due to a missed deadline would defeat the basic purpose of restitution.[6]

The Court in *Dolan* explicitly foreclosed Defendant's jurisdictional argument. The Court reasoned that some statutes impose a "jurisdictional" condition, which impacts a court's authority to hear a case, to consider pleadings, or to act upon motions that a party seeks to file.[7] Other statutes' deadlines are more ordinary "claims-processing rules" that do not limit a court's jurisdiction but regulate the timing of motions or claims brought before the court.[8] Yet other statutes create time-related directives that are legally enforceable but do not deprive a judge the power to take the action to which the deadline applies if the deadline is missed.[9] The Court

---

[1] 560 U.S. 605 (2010).

[2] 287 F.3d 1007 (10th Cir. 2002).

[3] *Dolan*, 560 U.S. at 608.

[4] *Id.* at 609.

[5] *Id.* at 611.

[6] *Id.* at 611, 615.

[7] *Id.* at 610.

[8] *Id.*

[9] *Id.* at 611.

concluded that the time limit for restitution is this last limitation, explaining that "[t]he fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."[10] Given this conclusion, this Court holds that it does have the authority to issue the minor victim restitution despite the restitution hearing date occurring 90 days after sentencing.

Defendant contends that the Court in *Dolan* permitted the district court to go beyond the 90-day deadline solely because the district court made clear prior to the deadline's expiration that it would order restitution, leaving open only the amount to be determined. To bolster this argument, Defendant also cites *United States v. Dando*.

In *Dando*, the defendant claimed that the district court lacked jurisdiction to enter restitution against him because the court failed to impose restitution within 90 days after sentencing.[11] The Tenth Circuit affirmed the district court's restitution order because the district court left the matter open at sentencing, which provided the defendant with the functional equivalent of notice as required by the statute.[12] Thus, it had jurisdiction to enter the restitution order.[13]

Here, Defendant argues that a court makes its intent to order restitution clear by holding a hearing or issuing an order. Defendant contends that merely scheduling a hearing is not enough to indicate its intent. Moreover, Defendant contends that the courts in *Dando* and *Dolan* were able to consider the matter open because they were merely working out the details of the Government's request. But here, the Government never submitted a formal restitution request within the deadline.

---

[10] *Id.*

[11] *Dando*, 287 F.3d at 1010 (10th Cir. 2002).

[12] *Id.*

[13] *Id.* at 1011.

Thus, Defendant argues that the Court could not consider the matter open because doing so relies on the presupposition of the request being made.

The Government contends that an order or hearing is not necessary to indicate the Court's clear intent to issue restitution. Moreover, the Government argues that complicated circumstances between the minor victim, her mother, and the guardian ad litem warrant flexibility with the restitution deadline; denying restitution would be contrary to the statute's intent; and the statute is not one that requires strict compliance.

The Court agrees with the Government. First, the Court made its intent to issue restitution clear. On August 5, 2024, the Court issued an order stating that the minor victim was entitled to restitution and appointed a guardian ad litem for the purposes of resolving her restitution claim. Moreover, on August 12, 2024, the Court advised Defendant at his sentencing hearing that restitution was mandatory. Then, on October 1, 2024, the Court set a restitution hearing at the Government's request. Although defense counsel was copied on the email discussing scheduling, it did not object to the Court setting a later hearing date. Even though the Court did not explicitly state in an order or at a hearing that it intended to issue restitution, the Court does not find that such a level of specificity is required under the law.

Additionally, both the Supreme Court and the Tenth Circuit liberally construe the restitution deadline to prioritize the interests of the victims who bear no responsibility for the missed deadline. Courts have repeatedly held that sum certainty can be decided at a later date—even a date past the 90-day limitation. Despite the Government's delay in providing Defendant with its restitution estimates, a continuance—as this Court ultimately ordered—would best resolve Defendant's concerns while also upholding the statutes' purpose of providing victims relief. For these reasons, revoking restitution completely would be an unjust remedy.

As such, the Court retains its power to order restitution despite the issuance occurring more than 90 days after Defendant's sentencing hearing. Accordingly, the Court will compute the amount of restitution Defendant owes to the victim.

**B.    The Amount of Restitution**

The Government requests the Court order restitution to the minor victim in the amount of $59,840. Its projection is based, in part, on information derived from a trauma therapist and the minor victim's guardian ad litem. The projected amount focuses solely on losses related to psychological care.

The guardian ad litem's report indicated that the trauma specialist recommended weekly therapy for up to two years. Then, once the minor victim has reached a level of therapeutic stability, the specialist indicated maintenance therapy sessions once per month would be needed. The Government projected this "maintenance therapy" to last an additional eight years. The specialist also commented on the need for life-long therapy sessions depending on life situations such as intimate relationships, childbearing, and other major life changes. The Government estimated that the minor victim would need at least 72 of these intermittent sessions throughout her lifetime.

The Government estimated that each 50-minute session would cost $220 and based its final calculations around this number. The guardian ad litem reported that the trauma specialist's current rate is $185 per 50-minute session; however, the average rate for this type of trauma therapy usually costs between $150 and $250 per session. The Government contends that it used the $220 figure based on inflation, routine rate increases, and therapeutic costs in other regions since the victim may move away from Wichita now that she is an adult.

The Defendant objected to the Government's projections, arguing that the Government failed to provide adequate justifications for the number of therapy sessions and the cost of the sessions. The Court recognizes that it may not "simply 'rubber stamp' a victim's claim of loss

based upon a measure of value unsupported by the evidence."[14] However, the Court also acknowledges that restitution has no formulaic calculation but is an equitable remedy based on "justice, morals, equity and good conscience."[15] With this in mind, the Court will resolve Defendant's restitution uncertainties with a "view towards achieving fairness to the victim" while making "a reasonable determination . . . rooted in a calculation of actual loss."[16]

Here, the Court is convinced that that Government has demonstrated a fair determination of the number of sessions the minor victim may reasonably need over the course of her life. However, the Court reduces the dollar amount the Government seeks per session. The trauma specialist's current rate is $185 per session, with rates varying between $150 and $250. Thus, the Court will use the median rate of $200 for its calculations.

Therefore, weekly sessions for the next two-years at $200 per session would costs $20,800 (104 sessions x $200 = $20,800). Monthly sessions over the next eight years for maintenance therapy would cost $19,200 (96 sessions x $200 = $19,200). Assuming 72 intermittent sessions are needed based on various triggering events over the course of the victim's life, that would cost $14,400 (72 sessions at $200 = $14,400). Accordingly, the total cost of the minor victim's psychological care equals $54,400. As such, the Court denies Defendant's Motion to Dismiss Restitution and orders Defendant to pay restitution to the minor victim in the amount of $54,440.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Restitution (Doc. 136) is **DENIED**.

---

[14] *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015)

[15] *Cont'l Oil Co. v. Ideal Truck Lines, Inc.*, 7 Kan. App. 2d 153, 158, 638 P.2d 954, 958 (1981).

[16] *United States v. Gallant*, 537 F.3d 1202, 1252 (10th Cir. 2008).

**IT IS FURTHER ORDERED** that Defendant pay restitution to the minor victim in the amount of $54,440.

**IT IS SO ORDERED.**

Dated this 9th day of January, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE